IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SMITH & NEPHEW, INC.,

      Plaintiff,

v.                                                               No. 2:04-cv-03027-STA-cgc

NEW HAMPSHIRE INSURANCE
COMPANY, ALLIED WORLD ASSURANCE
COMPANY LTD., ZURICH INSURANCE
COMPANY, GERLING KONZERN
ALLGEMEINE VERSICHERUNGS AG,
and ASSICURAZIONI GENERALI S.p.A.,

      Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART SMITH & NEPHEW'S MOTION TO SUPPLEMENT PROTECTIVE ORDER TO EXPLICITLY PROVIDE THAT MATERIALS MAY BE DESIGNATED CONFIDENTIAL BASED UPON POTENTIAL THAT DISCLOSURE COULD PREJUDICE DEFENSE OF UNDERLYING CLAIMS**

      Before the Court is Plaintiff Smith & Nephew, Inc.'s ("Smith & Nephew") Motion to Supplement Protective Order to Explicitly Provide that Materials May be Designated Confidential Based upon Potential that Disclosure Could Prejudice Defense of Underlying Claims ("Motion to Supplement") (Docket Entry "D.E." #279). The instant motion was referred to United States Magistrate Judge Charmiane G. Claxton for determination (D.E. #280). For the reasons set forth herein, Smith & Nephew's Motion to Supplement is hereby GRANTED IN PART AND DENIED IN PART.

**I. Introduction**

The instant case is an action for breach of contract and for declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202, in which Smith & Nephew asserts that Defendants as excess insurers must provide coverage for ongoing mass tort claims arising out of the early loosening of certain Smith & Nephew's prosthetic knee implants.

On May 20, 2008, the Court entered the parties' Stipulated Protective Order ("Protective Order"), which aimed to "expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, and adequately protect material entitled to be confidential." (Prot. Order at 1). The Protective Order provides that all material "shall be used solely for the prosecution and/or defense of this action." (Prot. Order ¶ 2). The Protective Order permits the producing party to "designate as confidential any Material that the producing party in good faith believes (a) contains trade secrets or other confidential business information, (b) is required to be maintained as confidential pursuant to any court order, settlement, or other contractual agreement, or (c) constitutes attorney work product." (Prot. Order ¶ 3). The Protective Order further designates certain documents set forth in Exhibit A as confidential material, including ten letters from James Irwin to Graham Lambourne regarding Smith & Nephew Profix and Genesis II Macrotextured knee implants, any quarterly report regarding Smith & Nephew Profix and Genesis II Mactrotextured Knees, and information contained in the electronic Smith & Nephew–Macrotextured "Client Workroom." (Prot. Order ¶ 3 & Exh. A).

The Protective Order sets forth that Confidential Material may only be disclosed to certain persons except with the prior consent of the producing party. (Prot. Order ¶ 9). The Protective Order provides that "Material that is not Confidential Material may be filed in Court, or offered for

admission in evidence at trial, and need not be filed under seal." (Prot. Order ¶ 13). The Protective Order further set forth the manner of filing Confidential Material:

> Except with respect to trial rebuttal evidence, in the event that a party intends to file Confidential Material or to offer Confidential Material for admission in evidence at trial, it shall notify the producing party of such intent at least fifteen (15) days in advance of the date it intends to file or offer the Confidential Material in order to afford the producing party an adequate opportunity to file a motion for impoundment of the Confidential Material. In the event the party intending to file or offer the Confidential Material opposes any motion for impoundment, the time for service of the opposition shall be five (5) business days after receipt of the motion, except as the moving party may otherwise agree in writing.

(Prot. Order ¶ 13).[1] Finally, the Protective Order provides as follows with respect to a challenge to any confidentiality designation:

> Any party shall have the right to challenge any designation of confidentiality by a producing party by seeking an order of the Court with respect to any Confidential Material. In any such application, the burden of establishing the need for confidentiality or disclosure of a document shall be upon the proponent of confidentiality, and no inference shall be drawn from the fact that the document previously was designated as confidential pursuant to this Order. . . .

(Prot. Order ¶ 14).

On February 12, 2010, Defendants filed a Motion to Unseal and/or Lift the Confidentiality Designation of Certain Documents ("First Motion to Unseal"). (D.E. #223). The First Motion to Unseal asserted that Smith & Nephew had "designated every document it has produced in this case as 'Confidential'" and had "filed every single pleading, exhibit and other document tendered to the Court in this case under seal." (Memo. in Support of Def.s' First Mot. to Unseal at 1). Defendants stated that they had elected not to previously challenge Smith & Nephew's "obvious overuse of the

---

[1] The Court notes that both parties have filed papers and exhibits under seal in the instant case. However, no motions for impoundment have been filed before the filings have been placed under seal, as anticipated by the Protective Order and as recommended by the Sixth Circuit to afford notice regarding public access. See In re Knoxville News Sentinel, 723 F.2d 470, at 475-76 (6th Cir. 1983).

Protective Order" and that, "[r]ather than litigating every confidential designation and every single filing," they merely sought to unseal ten documents relevant to discovery between Smith & Nephew and the Food and Drug Administration ("FDA") (Memo. in Support of Def.s' First Mot. to Unseal at 1). The Court denied Defendants' First Motion to Unseal without prejudice, concluding that if the FDA, on its own initiative, "requests additional information or documents from Defendants in order to respond to Defendants' currently pending subpoena to the FDA, Defendants may renew their Joint Motion." (Order Denying Def.s' First Mot. to Unseal ¶ 1) (D.E. #244).

On July 19, 2010, Defendants filed a Joint Motion to Unseal Documents ("Second Motion to Unseal") (D.E. # 251), which sought to unseal all "documents produced by Plaintiff Smith & Nephew, Inc. in discovery, the pleadings filed in this litigation by the parties, and the deposition transcripts and exhibits designated by Plaintiff as confidential." (Def.s' Second Mot. to Unseal at 1). In support of its motion, Defendants stated that Smith & Nephew had produced approximately 40,000 documents consisting of 450,000 pages and had designated all but two documents as confidential. (Memo. in Support of Def.s' Second Mot. to Unseal at 2 & n.1). Defendants argue that Smith & Nephew has "filed nearly every pleading and motion under seal—even where the documents, pleadings, and depositions do not even arguably contain confidential information." (Memo. in Support of Def.s' Second Mot. to Unseal at 2). Further, Defendants assert that Smith & Nephew has withheld over 46,200 documents containing over 220,000 pages as protected by attorney-client privilege and/or work product immunity and that Smith & Nephew has invoked a confidentiality designation as to each and every one of the depositions of current and former Smith & Nephew employees. (Memo. in Support of Def.s' Second Mot. to Unseal at 2). Accordingly, Defendants' Second Motion to Unseal sought to require Smith & Nephew to provide "the specific

4

bases" for the designations. (Memo. in Support of Def.s' Second Mot. to Unseal at 2).

On October 14, 2010, the Court held a hearing on Defendants' Second Motion to Unseal. On October 25, 2010, the Court entered an Order requiring Smith & Nephew to "specifically designate as confidential, and justify its confidentiality designation for" three categories of documents: (1) "all transcripts of depositions taken in this matter and all exhibits to those depositions"; (2) documents bearing Bates numbers SN80092284-SN80092434 and EIR000001-EIR001875; and (3) all documents produced on or after October 14, 2010 and all depositions that take place after October 14, 2010. (Order on Def.s' Second Mot. to Unseal at 1-2). The Court further ordered as follows: "Plaintiff shall submit, by October 28, 2010, any motion to modify the Stipulated Protective Order explicitly to provide that documents or other materials may be designated as confidential based upon the potential for disclosure to result in prejudice to Smith & Nephew Inc.'s defense of underlying claims." (Order on Def.s' Second Mot. to Unseal at 3).

On October 28, 2010, Smith & Nephew filed the instant Motion to Supplement. The Motion to Supplement seeks that the Court either (1) hold that the Protective Order as currently in effect extends protection to documents that could prejudice Smith & Nephew's defense of the underlying claims, or that (2) the Protective Order be supplemented to extend protection to documents that could prejudice Smith & Nephew's defense of the underlying claims. (Memo. in Support of Pl.s' Mot. to Supplement at 8-9). Smith & Nephew clarifies that its motion "does not seek a determination that any particular document is entitled to protection under the Protective Order, either as it exists now or as it may be supplemented as a result of this motion. This motion only addresses the scope of the Protective Order itself." (Memo. in Support of Pl.s' Mot. to Supplement at 8 n.4).

On November 15, 2010, Defendants filed a Joint Memorandum of Law in Opposition to

5

Plaintiff's Motion to Supplement ("Response"). (D.E. #281). Defendants assert that the current Protective Order sets forth only three categories of confidential material and does not permit Smith & Nephew to designate documents as confidential on the basis that they may be prejudicial to the underlying claims. (Def.s' Resp. at 3-4). Defendants argue that the Court should not modify the Protective Order to allow Smith & Nephew to designate all potentially prejudicial documents as confidential. (Def.s' Resp. at 5-12). Finally, Defendants assert that, if this Court were to modify the Protective Order, the Court should only permit Smith & Nephew to designate prejudicial documents as confidential if Smith & Nephew meets its burden of proving two requirements: (1) that the document is prejudicial, and (2) that the underlying claimants would not be entitled to the document in their own pending litigation. (Def.s' Resp. at 9, 12).

On December 2, 2010, Smith & Nephew filed a Reply in Support of its Motion to Supplement ("Reply") (D.E. #284). First, Smith & Nephew asserts that the relief sought in its motion would simply make express that which the Protective Order already implies, which is that Smith & Nephew anticipated that potentially prejudicial documents were entitled to confidential treatment even though "the Protective Order might have more clearly identified potentially prejudicial materials as among the materials entitled to confidential treatment." (Pl.'s Reply at 2-4). Smith & Nephew again asserts that the materials listed on Exhibit A to the Protective Order—which were "singled-out precisely because of the potential that their disclosure could prejudice Smith & Nephew's defense effort"—should resolve "any doubt that the parties understood the Protective Order to extend to such materials . . . ." (Pl.'s Reply at 3). Thus, Smith & Nephew contends that it is Defendants who are "attempting to retroactively change the protections contemplated when the Protective Order was entered" and that their "efforts should not be rewarded." (Pl.'s Reply at 4).

6

Additionally, Smith & Nephew's Reply asserts that the relief sought would not relieve Smith & Nephew of the burden to show that designated materials are entitled to confidential treatment, and Smith & Nephew posits that it will clearly be able to show that fruits of discovery in the instant action could prejudice its defense of underlying claims. (Pl.'s Reply at 4-6). Smith & Nephew asserts that, just because it "has settled most of the underlying claims asserted to date does not somehow mean that public release of documents tending to establish Smith & Nephew's liability or revealing its defense strategy would not be prejudicial, either in making additional settlements difficult or impossible to strike, or in driving up the price to resolve current and future claims." (Pl.'s Reply at 6). Finally, Smith & Nephew argues that any purported requirement that materials are entitled to confidentiality only if not discoverable by underlying claimants it contrary to law and reason. (Pl.'s Reply at 6-11).

**II. Analysis**

Protective orders are authorized by Rule 26 of the Federal Rules of Civil Procedure "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. . . ." Fed. R. Civ. P. 26(c). The rule requires that the Court find "good cause" for the entry of a protective order, and it specifically permits the Court to forbid disclosure or discovery, specify terms for disclosure or discovery, prescribe a discovery method other than the one selected by the party seeking discovery, forbid inquiry into certain matters, limit the scope of disclosure, designate persons who may be present while discovery is conducted, seal depositions and other documents and information, and prohibit trade secrets and other commercially sensitive information from being revealed. Fed. R. Civ. P. 26(c)(1)(A)-(H). "A protective order is always subject to modification or

termination for good cause, even where the parties have consented to its entry."[2] In re Southeastern Milk Antitrust Litigation, 666 F. Supp. 2d 908, 914 (E.D. Tenn. 2009); Manual for Complex Litigation, Fourth § 11.432; see also In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation, 664 F.2d 114 (6th Cir. 1981) (acknowledging that the district court's authority "includes the power to modify a protective order.").

### A. *Scope of Current Protective Order*

The first issue presented in Smith & Nephew's Motion is whether the instant Protective Order should be "held" to apply to documents potentially prejudicial to Smith & Nephew's defense of the underlying claims. (Memo. in Support of Mot. to Supplement at 8). Specifically, Smith & Nephew argues that the "Protective Order is arguably already broad enough to include the potentially prejudicial materials at issue" and requests that the Court "make explicit that the Protective Order entered in this matter (Doc. 105) extends to materials that could be prejudicial to the defense of the underlying tort claims." (Memo. in Support of Mot. to Supplement at 1, 9).

Upon review, the Court finds that the Protective Order clearly sets forth the requirements for designating a document as confidential. Specifically, confidential material must either be listed in Exhibit A or must fall under three categories: (1) contains trade secrets or other confidential business information, (2) is required to be maintained as confidential pursuant to any court order, settlement, or other contractual agreement, or (3) constitutes attorney work product. (Prot. Order ¶ 3). However, the Protective Order does not include a category for confidentiality designation on the

---

[2] Defendants' Response asserts that a "unilateral" modification of the Protective Order should not be permitted. (Resp. at 1-3, 7, 9). However, any party to a Protective Order, even a stipulated protective order, may propose modifications to the Protective Order upon motion to the Court. Under such circumstances, all parties are able to present their positions on the modification and the Court, not the proponent unilaterally, is authorized to determine whether good cause exists under Rule 26 to modify the Protective Order.

basis that the document may be prejudicial to Smith & Nephew's defense of the underlying claims, which Smith & Nephew admits. (Memo. in Support of Pl.s' Mot. to Supplement at 1) (stating that "the Protective Order does not specifically list potential prejudice to the defense of underlying claims as a basis for protection."). Accordingly, the Court concludes that the Protective Order, as currently in effect, does not specifically allow Smith & Nephew to designate documents as confidential solely based upon the potential prejudice to the defense of underlying claims.

Furthermore, Smith & Nephew requests that the Court determine that "materials that could prejudice its defense of underlying claims are already entitled to protection under the Protective Order as 'confidential business information.'" (Memo. in Support of Mot. to Supplement at 9). However, as Smith & Nephew acknowledges, the Court is not addressing at this stage whether any documents are entitled to protection under certain provisions of the Protective Order; on the contrary, the Court is merely considering the scope of the Protective Order. (Memo. in Support of Mot. to Supplement at 1). Accordingly, the Court declines to address the protections entitled to any documents as "confidential business information" at this time.

Finally, with respect to the current Protective Order, Smith & Nephew argues that the purpose of the Protective Order was "[p]rimarily to avoid the potential that the exchange of documents in this coverage action would prejudice its defense of the underlying claims." (Memo. in Support of Mot. to Supplement at 2). Thus, Smith & Nephew argues that "the relief sought is clearly consistent with the Protective Order and its purpose." (Memo. in Support of Mot. to Supplement at 9). In support of this proposition, Smith & Nephew asserts that "it is particularly notable that the documents that the Protective Order specifically identifies as entitled to protection are included *because they concern Smith & Nephew's defense of underlying claims.*" (Memo. in

9

Support of Mot. to Supplement at 9). Despite whatever purposes the parties considered when agreeing to the Protective Order, the explicit terms of the Protective Order guide the designation of documents as confidential. As already discussed, the Protective Order solely lists three categories of documents as confidential, along with certain enumerated documents in Exhibit A. Thus, the current Protective Order, as negotiated and stipulated by the parties, speaks for itself as to what categories of documents may and may not receive confidentiality designation. Therefore, Smith & Nephew's proposal that the Court "make express that which [it] already implies" is DENIED.

### B. Motion to Supplement Protective Order

Next, Smith & Nephew requests that the Court modify the Protective Order to provide that a party may designate as confidential any material that the party in good faith believes contains information that could prejudice Smith & Nephew's defense of the underlying tort claims that are the subject of this coverage action.

First, Smith & Nephew presents its position as to why the Court has good cause to modify the Protective Order. Of critical importance, Smith & Nephew details the harm it would face if documents potentially prejudicial to the underlying claims may not be designated as confidential. Specifically, Smith & Nephew argues that it should not be required to "make underlying claimants' case for them" while "seeking to hold Defendants to their coverage obligations." (Memo. in Support of Mot. to Supplement at 2.) Smith & Nephew asserts that the risk of harm is especially high because Defendants posit that Smith & Nephew "can recover under the subject insurance policies with respect to settled claims only if Smith & Nephew proves its own liability to the underlying claimants." (Memo. in Support of Mot. to Supplement at 2). Furthermore, Smith & Nephew claims that even though it has settled most of the underlying claims asserted to date, it would still be

10

prejudicial to publicly release any documents "tending to establish Smith & Nephew's liability or revealing its defense strategy" by either "making additional settlements difficult or impossible to strike, or in driving up the price to resolve current and future claims." (Reply at 6).

Smith & Nephew asserts that courts have recognized the potential prejudice to the insured party that is both defending underlying claims and pursuing coverage actions against their insurers. Specifically, in Montrose Chemical Corporation v. Superior Court, 861 P.2d 1153 (Cal. 1993) ("Montrose I"), the court concluded that "when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insured's proof will prejudice its insured in the underlying litigation is obvious." Id. at 1162; see also Wells Dairy, Inc. v. Travelers Indem. Co. of Ill., 241 F. Supp. 2d 945, 977 (W.D. Iowa) (recognizing the risk of undermining possible defenses the insured might have against the underlying claimants).

Smith & Nephew argues that an additional rationale for prophylactic measures is to prevent the insurer from assisting underlying claimants in order to avoid coverage. See Haskel, Inc. v. Superior Court, 33 Cal. Rptr. 2d 520, 529 (Cal. App. 1995) (stating that "the insurer, who is supposed to be on the side of the insured . . . effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit"); Montrose Chem. Corp. v. Superior Court, 31 Cal. Rptr. 2d 38, 42-43 (Cal. App. 1994) ("Montrose II") (stating that "the insurer must not be permitted to join forces with the plaintiffs in the underlying action as a means to defeat coverage").

Smith & Nephew argues that the prejudice exists whether the underlying claimants would be able to discover the documents in their cases or not because the discovery in this case would create a "one-stop repository . . . for underlying claimants to mine in advancing their own claims"

11

without the need for their "appropriately drafted discovery requests." (Reply at 6-7). Smith & Nephew relies on the court's reasoning in Allianz Ins. Co. v. Guidant Corp, 839 N.E.2d 113 (Ill. App. 2005) that a protective order is appropriate even when "the discovery sought in this case overlaps with the discovery sought by the plaintiffs in the underlying claims." (Reply at 7) (citing Allianz, 839 N.E.2d at 123). Smith & Nephew posits that it is because the materials may be discoverable in the underlying case that courts must take protective measures to "recognize the realities of our adversarial system, teaching that the team of lawyers hired by coverage-disclaiming insurers (such as that assembled here) should not, in effect, be added to the slate of advocates representing each claimant in the underlying matters." (Reply at 7-8). Ultimately, Smith & Nephew asserts that because "Defendants do not even deign to discuss this practical problem suggests that their true motive in opposing this motion is precisely to cause Smith & Nephew to 'pay the price' of risking prejudice to its defense of the underlying litigation in order to have any prospect of taking the benefit of the insurance it purchased." (Reply at 8).

Defendants respond to Smith & Nephew's claims by asserting that good cause does not exist to modify the Protective Order. Initially, Defendants argue that Smith & Nephew's assertions of prejudice are an "obvious exaggeration." (Resp. at 6). Defendants assert that when Smith & Nephew filed this action and when it agreed to the stipulated Protective Order, numerous claims were pending; however, Defendants argue that it is "particularly dubious" now that only eight claims remain pending that Smith & Nephew "[i]nexplicably" and "for the first time" contends that documents that might prejudice the underlying claims should be deemed confidential. (Resp. at 3-4, 10, 12). Defendants further add that none of the underlying claims were taken to trial, much less to verdict or judgment, and that no litigation was filed in the vast majority of claims. (Resp. at 3).

12

Defendants state that, of the eight claims remaining, no activity has occurred on most of them for months, if not years, and that only two claimants appear to be actively involved in litigation. (Resp. at 5). Thus, Defendants conclude that, "[g]iven that [Smith & Nephew] has settled with every other underlying macrotexture knee implant claimant, it is highly likely if not a near certainty that the remaining claims will likewise be settled . . . ." (Resp. at 5-6). Additionally, Defendants argue that Smith & Nephew initiated the instant case, as opposed to the insurer having filed the declaratory judgment action. (Resp. at 8-9, 12). Therefore, Defendants claim that it is "disingenuous" for Smith & Nephew to assert prejudice on the basis of its own litigation, especially as Smith & Nephew has never requested the most commonly used remedy—a stay the instant action—during the pendency of the underlying claims. (Resp. at 8-9).

Next, Defendants assert that Smith & Nephew's prejudice is exaggerated because the underlying claimants may be able to obtain many of the same documents through discovery in their cases. (Resp. at 6-7). Defendants assert that "most of the documents Defendants are seeking to unseal would clearly be available to the remaining claimants through discovery in the underlying claims" because they are relevant to the underlying claims and are not otherwise privileged. (Resp. at 6). Defendants further state that a review of the discovery produced with respect to the underlying claims "demonstrates that the underlying plaintiffs are requesting information that is the same or similar in nature to the documents [Smith & Nephew] is arguing to this Court should be kept confidential." (Resp. at 7). Otherwise stated, Defendants posit that Smith & Nephew has failed to explain "why documents that are also available to underlying claimants through ordinary discovery could ever be deemed prejudicial in the first instance." (Resp. at 5). In sum, Defendants argue that "[s]aying that the documents are prejudicial is simply not enough" and that Smith & Nephew "has

no right to protection from bad publicity, future litigation, or harm to its business that results from the designation of documents as confidential when there is absolutely no basis to warrant such a designation." (Resp. at 6-7). Finally, in addition to their arguments that Smith & Nephew's potential prejudice is exaggerated, Defendants also argue that the documents they ultimately decide to file with the court have a presumption in favor of public access under federal constitutional law and Tennessee law. (Resp. at 10).

Upon review, the Court is persuaded that Smith & Nephew has established good cause for the Protective Order to be modified to provide that a party may designate as confidential any material that the party in good faith believes contains information that could prejudice Smith & Nephew's defense of the underlying tort claims that are the subject of this coverage action. As the Rhinehart court notes, the parties have access to the discovery materials in this case "only by virtue of the trial court's discovery processes," and accordingly, the information should be used "only for purposes of trying [the] suit." 467 U.S. at 32. Thus, as other courts have acknowledged, it is important for a court to prevent any utilization of the materials in this case that have merely been "discovered, but not yet admitted" to either the benefit of detriment of any party through other litigation or otherwise. Id. at 33.

In finding that good cause exists to modify the Protective Order, the Court acknowledges Defendants' assertions that Smith & Nephew's potential prejudice might not be as extensive as at previous stages in this case. The Court recognizes that fewer claims are now pending, that there appears to be only slight activity in the underlying cases, and that all cases to date have settled. However, despite what might be lessened prejudice at this stage in the litigation, the potential prejudice of either making additional settlements difficult or impossible to strike or driving up the

14

price to resolve current or future claims is still significant enough to satisfy the good cause requirement of Rule 26(c).

Additionally, the Court considered Defendants' assertion that the Protective Order should not be modified to designate potentially prejudicial documents as confidential because all documents have a presumption of public access under federal and state constitutional law. (Resp. at 10). However, as Defendants implicitly admit, there is no right to public access to documents obtained in pretrial discovery but not filed with the Court, and a Protective Order should issue or be modified if the good cause requirement is met. Rhinehart, 467 U.S. at 37; Fed. R. Civ. P. 26(c).

Next, the Court considered Defendants' proposal that Smith & Nephew must demonstrate that any document entitled to protection is in fact prejudicial rather than merely potentially prejudicial. (Resp. at 11). However, the Court finds it nearly impossible to view the confidentiality designation in such a narrow manner when considering the risk of prejudice to multiple underlying claimants, and potential future claimants, in ongoing litigation. As such, the Court finds that good cause exists to allow the parties to designate as confidential documents that are potentially prejudicial to the underlying litigation.

Furthermore, the Court considered Defendants' proposal that, to be designated as confidential, the documents should not be discoverable to underlying claimants. However, the Court finds that adding this additional speculative analysis to the parties' and the Court's already significant task of managing the voluminous discovery materials in this case is unnecessary. Further, the Court agrees with Smith & Nephew that the discovery disclosures in this case should not be a "one-stop repository . . . for underlying claimants to mine in advancing their own claims" without the need for their "appropriately drafted discovery requests." (Reply at 6-7). Although

15

Smith & Nephew's argument regarding prejudice does rely heavily upon the harm that it would face if documents discovered in this case were available to underlying claimants, the prejudice results not only from what is discoverable but the ease of which underlying claimants could obtain information without any effort to pursue their cases. This is inconsistent with the Protective Order in effect and as to-be modified, which states that all material obtained in discovery in this case shall be "used solely for the prosecution and/or defense of this action." (Prot. Order ¶ 2). To meet this goal, the Court finds that good cause exists for to modify the Protective Order even when the potential exists that "the discovery sought in this case overlaps with the discovery sought by the plaintiffs in the underlying claims." See Allianz, 839 N.E.2d at 123.

Finally, the Court considered Defendants' proposal that the parties not be permitted to designate "entire documents as confidential merely because they may contain a portion of prejudicial information." (Resp. at 11). Defendants rely upon In re Southeastern Milk, which concluded that, "while it must be acknowledged that the task of preparing redacted pleadings may be a burdensome one given the voluminous nature of those pleadings, that burden rightly belongs with the parties." 666 F. Supp. 2d at 916. Upon review, the Court finds that the parties should designate as confidential only the portions of documents that meet the criteria set forth in the Protective Order; however, in the event that an entire document meets the criteria set forth in the Protective Order, the document may be designated confidential in its entirety.

Despite the Court's ruling, it is essential to note that the Court's modification of the scope of the Protective Order governing pretrial discovery *is not determinative of the issue of whether documents designated as confidential under the Protective Order may be filed with the Court under seal.* While it is well-established that "[c]onfidential materials filed solely in connection with

16

pretrial discovery remain protected as long as the 'good cause' requirement of Rule 26(c) is satisfied," such documents "will lose confidential status" absent a showing of "most compelling reasons" if the materials are filed with the Court for purposes other than mere connection with pretrial discovery, such as at trial or in relation to a motion for summary judgment. Manual for Complex Litigation, Fourth, § 11.432; see Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 (1984); Mever Goldberg, 823 F.2d at 163; In re Knoxville News-Sentinel, 723 F.2d at 476; In re Southeastern Milk, 666 F. Supp. 2d at 915 ("While sealing orders are permissible under the First Amendment, the 'good cause' standard of Rule 26(c) does not apply; rather, the party seeking to seal must show 'compelling reasons.'") (citations omitted). Neither harm to reputation nor conclusory allegations of injury in an industry or local community are sufficient to overcome the presumption in favor of public access. Brown,, 710 F.2d at 1179-80 (citing Joy v. North, 692 F.2d 880, 884 (2d Cir. 1982)). Thus, while the parties will be permitted to designate potentially prejudicial materials as confidential for purposes of pretrial discovery, all parties will be required to meet this heightened standard upon any consideration of whether documents already filed with the Court—or documents that will be filed in the future—may be sealed.

**III. Conclusion**

For the reasons set forth herein, Smith & Nephew's Motion to Supplement Protective Order to Explicitly Provide that Materials May be Designated Confidential Based upon Potential that Disclosure Could Prejudice Defense of Underlying Claims (D.E. #279) is hereby GRANTED IN PART AND DENIED IN PART. Smith & Nephew is hereby ORDERED to submit a proposed Modified Protective Order within five days of the entry of this Order.

**IT IS SO ORDERED** this 22nd day of December, 2010.

                                                  s/ Charmiane G. Claxton
                                                  CHARMIANE G. CLAXTON
                                                  UNITED STATES MAGISTRATE JUDGE